**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID JONES,**

       **Plaintiff,**

**v.**                                                          **CIVIL ACTION NO.:  5:17-CV-00100**
                                    **Honorable Frederick P. Stamp, Jr.**

**MICHAEL S. WHITE, II individually**
**and in his official capacity as a**
**representative of the West Virginia State**
**Police; COLONEL J. L. CAHILL, in his official**
**capacity as Superintendent of the West**
**Virginia State Police; JAMES W. DAVIS, JR.,**
**ESQ., Individually and in his official capacity**
**as a representative of the Hancock County**
**Prosecutor's Office; JACK WOOD, ESQ., individually**
**and in his official capacity as a representative of**
**the Hancock County Prosector's Office; and**
**HANCOCK COUNTY, WEST VIRGINIA,**

       **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANTS**
**MICHAEL S. WHITE, II AND COLONEL J. L. CAHILL'S MOTION TO DISMISS**

Defendants Michael S. White, II and Colonel J. L. Cahill's (collectively, "the State Police

Defendants") Motion to Dismiss presents the Court with the following issues:

      1.     In order to state a Section 1983 claim for violations of his First and Fourth

Amendment rights, one must show that he was seized by a government officer without probable

cause.  If Plaintiff admitted to making Facebook posts that threatened bodily harm to public

officials in violation of statutes prohibiting such threats, and two different magistrates found

probable cause for two of the charges, may he bring a claim for First and Fourth Amendment

violations?

      2.     In order to state a claim under 42 U.S.C. § 1983 for violations of his Sixth and

Eighth Amendment rights, a person must show that a public official infringed upon his right to

7814109

counsel and his right to be free from excessive bail, respectively.  If Plaintiff makes no factual allegations against a particular Defendant related to either his right to counsel or the setting of his bail, has Plaintiff stated a claim under either the Sixth or Eighth Amendment against that particular Defendant?

    3.    No one may seek monetary damages or retrospective declaratory relief against a state official sued in his official capacity, but instead, may only seek prospective injunctive relief.  When there are no factual allegations in the complaint to indicate that there is a threat of continuing harm in the future, may Plaintiff bring official capacity suits under 42 U.S.C. § 1983 against state officials?

## I.    STATEMENT OF FACTS

    The following facts, taken from the Complaint and documents attached thereto, are accepted as true only for purposes of this Motion.

    On June 24, 2015, Plaintiff David Jones made a post on his Facebook page, complaining about local law enforcement officers, in which he stated:

> It is time to have Skinner's ass FIRED.  He is a worthless piece of crap who should not be a cop.

> I think he already knows that ANYTHING drug related ever happens to either of my girls, that I don't find Thorn, Murray, White, Fletcher or any of these pieces of crap to be "Cool Mother F'ers". And I will hunt them down and put a bullet in their head.

> How in the hell are these ass hole [*sic*] getting deputized and many claiming to be DEA.  ROFL.  We all know that is a joke.

Compl. ¶ 16-17 (ECF No.1), Ex. 1 (ECF No. 1-1).

    Two days later, Trooper White learned from another law enforcement officer of Mr. Jones's post, which was seen as an "online threat made to multiple public officials."  Compl. Ex. 1.  The post referred to retired Chester Police Chief Thorn, current Chester Police Chief Murray,

Retired Hancock County Sheriff and current Magistrate White, and current Hancock County Sheriff Fletcher.   *Id.*  Trooper White went to Mr. Jones's house that same day to ask him about the post.  *Id.*  Mr. Jones admitted to Trooper White that he had made the post.  *Id.*  Trooper White therefore arrested Mr. Jones and charged him with one felony count of making terroristic threats, in violation of West Virginia Code § 61-6-24(b).  *Id.*

This initial charge against Mr. Jones was set for a preliminary hearing on July 1, 2015.  Compl. ¶ 25.  On that date, however, the State voluntarily dismissed the charge, but charged Mr. Jones with two felony counts of retaliation against public officials, in violation of West Virginia Code § 61-5-27(c).  Compl. ¶¶ 25, 31, Exs. 3-4 (ECF Nos. 1-3, 1-4).

The two charges of July 1, 2015 were based upon Facebook posts Mr. Jones allegedly had made the previous year.  In the first, dated July 7, 2014, Mr. Jones posted:

> Hancock County Judge Martin J. Gaughan feels sympathetic to heroin users.
>
> So please, all heroin user!! [*sic*]  Go to the judges [*sic*] home and take what you want, trash the place and terrorize HIS family.  He is okay with it.
>
> And don't forget the nasty New Cumberland mayor on Ridge Ave who hides behind her home security system.
>
> Help yourself.  They are okay with it.

Compl. ¶ 32, Exs. 4, 5. This post included a link to a newspaper article that quoted Judge Gaughan as being supportive of drug intervention and therapy programs.  Compl. ¶ 32, Exs. 5-6.

In another post, dated August 24, 2014, Mr. Jones posted:

> Dear Criminals and Crackheads,
>
> Please go to this address
>
> Randy Swartzmiller
> 216 Heartwood Dr
> Chester, WV 26034

> and do everything you have done to terrorize other citizens of
> Hancock County.  Help yourself to his stuff.  Obviously he does
> not care.  Camp out in woods and stay as long as you like.

Compl. ¶ 34, Exs. 3, 7. The post included a satellite mapping image of Mr. Swartzimiller's

home, as well as a link to a newspaper article describing how legislation sponsored by Mr.

Swartzmiller when he was a member of the House of Delegates—which banned ownership of

certain dangerous and exotic animals—angered some constituents, who feared they would lose

their pets or livestock.  Compl. Exs. 7-8.

    For these latter two charges, Trooper White obtained arrest warrants from Magistrate

William S. Hicks, who found probable cause as to both counts.  Compl. Exs. 3-4. While Mr.

Jones was in court for the preliminary hearing on the initial charge, Trooper White served him

with the arrest warrants for the latter two charges.  Prelim. Hr'g Tr. 60:25-61:3, July 29, 2015,

Compl. Ex. 15 (ECF No. 1-15).

    Mr. Jones alleges that his bail was set by the "Individual Defendants" at $200,000 for the

initial charge and $50,000 for the subsequent two charges.  Compl. ¶ 57.  Mr. Jones further

alleges that Defendants Prosecutor James W. Davis and Assistant Prosecutor Jack Wood issued a

subpoena to Mr. Jones's attorney, seeking to have Mr. Jones's attorney testify at the preliminary

hearing on the latter two charges.  *Id.* at ¶¶ 40-46.

    The preliminary hearing for the latter two charges was held on July 29, 2015.  *Id.* at ¶ 47.

Magistrate David E. McLaughlin presided over the preliminary hearing.  Prelim. Hr'g Tr. 1,

Compl. Ex. 15.  After hearing from the State's witnesses, and after Mr. Jones's attorney had the

opportunity to cross examine those witnesses and argue against a finding of probable cause,

Magistrate McLaughlin found there was probable cause to believe Mr. Jones had committed both

offenses with which he was charged, and he bound the case over to the Hancock County Circuit

Court.  *Id.* at 69.  The charges against Mr. Jones were dismissed on September 12, 2016.  Compl. ¶ 58.

Mr. Jones filed this case on June 30, 2017, asserting five counts under 42 U.S.C. § 1983 against all Defendants:  Violations of the First Amendment to the U.S. Constitution and Art. III, § 7 of the West Virginia Constitution (Count I); Violations of the Fourth Amendment to the U.S. Constitution and Art. III, § 6 of the West Virginia Constitution (Count II); Violations of the Sixth Amendment to the U.S. Constitution (Count III); Vindictive prosecution in violation of the Fourteenth Amendment to the U.S. Constitution (Count IV), and Excessive bail in violation of the Eighth Amendment to the U.S. Constitution and Art. III, § 5 of the West Virginia Constitution (Count V).  *Id.* at 12-14.  Mr. Jones seeks a declaratory judgment that Defendants' alleged actions were unlawful and violated his rights, an injunction to prohibit Defendants from subjecting Mr. Jones to the conduct alleged in the Complaint in the future, compensatory damages, and attorneys' fees and costs.  *Id.* at 15.

## II.    STANDARD OF DECISION

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).  A claim is plausible on its face if the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*   When a complaint pleads facts that are "merely consistent with" a defendant's liability, it has not stated a plausible claim.  *Id.*

Moreover, a plaintiff must plead more than mere labels and conclusions, and must provide enough factual allegations to show his entitlement to relief.  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (internal citation omitted). Thus, when deciding a motion to dismiss, a court should begin by identifying the pleadings that are mere legal conclusions, not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679. Only factual allegations are presumed to be true, and the court must determine whether those allegations plausibly give rise to an entitlement to relief. *Id.*

When reviewing the sufficiency of a complaint, a court may consider not only the allegations in the complaint, but also documents that are explicitly incorporated into the complaint by reference, those attached to the complaint as exhibits, and documents submitted by the movant that were not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint, and there is no dispute about the document's authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## III.    ARGUMENT

The Court should dismiss all counts against the State Police Defendants because Mr. Jones has not pled sufficient facts to state a plausible claim for relief or to overcome Trooper White's qualified immunity. First, Trooper White is entitled to qualified immunity from the claims arising from the First and Fourth Amendments because he had at least arguable probable cause to arrest Mr. Jones. Second, Mr. Jones fails to allege sufficient facts against the State Police Defendants to make his claims under the Sixth and Eighth Amendments plausible. Finally, the official capacity claims against the State Police Defendants should be dismissed because Mr. Jones does not allege any facts to state a recognized claim for equitable relief against state officials sued in their official capacities.

**A.      Trooper White Is Entitled to Qualified Immunity from Mr. Jones's First and Fourth Amendment Claims Because Trooper White Had at Least Arguable Probable Cause to Believe Mr. Jones Had Violated the Law.**

Mr. Jones's three counts related to his arrest and criminal prosecution—Counts I, II, and IV—should all be dismissed because Trooper White had probable cause, or at least arguable probable cause, to support the arrest of Mr. Jones.  Indeed, two different magistrates found probable cause to support the latter two charges of retaliation against public officials.  Because the existence of arguable probable cause provides immunity from claims of First or Fourth Amendment violations under 42 U.S.C. § 1983, the Court should dismiss Counts I, II, and IV.

The essential elements of any Section 1983 action are: (1) that the defendant was acting under color of state law; and (2) that the defendant's actions deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988). Thus, "[i]f there is no violation of a federal right, there is no basis for a section 1983 action[.]"  *Id.*[1]  Mr. Jones alleges that Defendants violated his First Amendment right by arresting him in retaliation for engaging in Constitutionally-protected speech.  Compl. ¶¶ 62-68. He alleges his Fourth Amendment right to be free from unreasonable seizure was violated because he was arrested without a warrant or exigent circumstances, because he was arrested for not acceding to unspecified demands of Defendants, and because Defendants charged him with a "genuine animus." *Id.* at ¶¶ 70-74, 80-84.[2]

---

[1] Thus, to the extent that Mr. Jones bases his Section 1983 claims on alleged violations of the West Virginia Constitution, those counts should be dismissed for failure to state a claim upon which relief may be granted.

[2] Count II is described as "Violations of the Fourth Amendment and Art. III, § 6," and Count IV is styled "Vindictive Prosecution in Violation of the Fourteenth Amendment."   A Section 1983 vindictive prosecution claim does not seem to be recognized by the Fourth Circuit.  Some courts within this circuit have treated this claim as one for malicious prosecution.  *See, e.g.*, *Bates v. Foster*, Civil Action No. 8:14-2667-MGL, 2015 WL 5037982, at *2, 7 (D.S.C. Aug. 26, 2015) (treating plaintiff's claim of "vindictive prosecution" under Section 1983 as one of malicious prosecution).  The Fourth Circuit Court of Appeals, without setting forth the elements of a Section 1983 vindictive prosecution claim, has treated the action as

In order to state a claim under Section 1983 for retaliatory arrest in violation of the First Amendment, a plaintiff must show that (1) he engaged in protected speech, (2) the defendant's alleged retaliatory action adversely affected the plaintiff's protected speech, and (3) a causal relationship exists between the speech and the alleged retaliatory action. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015). The causal requirement, however, is a rigorous one: It is not enough that the protected speech played a role in the arrest; the plaintiff must demonstrate that "but for" the speech, the officer would not have made the arrest. *Id.* In other words, the plaintiff must show that the government official acted "because of, not merely in spite of, the action's adverse effects" upon his protected speech. *Ross v. Early*, 746 F.3d 546, 560-61 (4th Cir. 2014) (internal quotation and citation omitted).

To state a claim for false arrest Section 1983, a plaintiff must demonstrate that he was arrested without probable cause. *See Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974). Similarly, "[a] malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (internal quotation and citation omitted). The elements of a Section 1983 "malicious prosecution" claim are that a "defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.*

---

one for selective prosecution. *United States v. DeBardeleben*, 823 F.2d 549, No. 85-5164, at *11 (June 23, 1987) (unpublished opinion). If Mr. Jones intends to claim selective prosecution, he does not make any allegations that other, similarly-situated persons have not been prosecuted or that the State's decision to charge him was based on an impermissible criteria, such as race, religion, or political beliefs. *See id.* If, on the other hand, his intent is to claim that criminal charges were brought against him without probable cause due to personal animus, Count VI is duplicative of Count II, and as set forth below, the existence of probable cause for his arrest defeats such a claim.

The doctrine of qualified immunity, however, protects even those police officers who commit constitutional violations but who could reasonably believe that their actions were lawful, in light of clearly established law at the time of the action. *Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017). The Fourth Circuit Court of Appeals has emphasized that "qualified immunity protects law officers from bad guesses in gray areas, and it ensures that they may be held personally liable only for transgressing bright lines." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (internal quotation and citation omitted).

Thus, in order to be entitled to qualified immunity, a defendant must either show (1) that no constitutional violation occurred; or (2) that the right violated was not clearly established at the time it was violated. *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 396 (4th Cir. 2015). A court may consider either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). It is important to resolve qualified immunity questions at the earliest possible stage of litigation. *Id.* at 232. Qualified immunity is particularly important in the law enforcement field; otherwise, police officers' ability to protect the public would be severely hampered if their every decision was subject to second-guessing in a lawsuit. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).

A right is "clearly established" for qualified immunity purposes if the contours of the right are sufficiently clear so that a reasonable officer would understand that what he is doing violates the right. *Cox v. Quinn*, 828 F.2d 227, 238 (4th Cir. 2016). The right at issue, however, is not defined as a broad general proposition, but rather, in light of the specific context of the case. *Id.*

The existence of probable cause, or even arguable probable cause, for an arrest defeats claims under Section 1983 for unlawful arrest in violation of either the First or Fourth

Amendments.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."); *Pegg*, 845 F.3d at 119 (finding that officer was entitled to qualified immunity from plaintiff's Fourth Amendment unlawful arrest and First Amendment retaliatory arrest claims due to the existence of probable cause for arrest); *Gomez*, 296 F.3d at 261-62 (noting that in assessing whether police officer is entitled to qualified immunity, question is not whether there was actually probable cause, but whether an objective officer could reasonably believe probable cause existed).  Moreover, the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Thus, whether Mr. Jones actually violated the statutes under which he was charged or whether the statutes themselves are constitutional is irrelevant to the analysis of qualified immunity.   The focus of the question is whether Trooper White acted objectively reasonably in believing that there was probable cause to arrest Mr. Jones.

Trooper White had probable cause, or at least arguable probable cause, to believe that Mr. Jones had violated West Virginia's terroristic threat statute, which makes it a felony to knowingly and willfully *threaten* to commit a terrorist act, even without the intent to actually *commit* the act.  W. Va. Code § 61-6-24(b).

"Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant an objectively reasonable person in believing that the suspect has committed, is committing, or is about to commit an offense." *Ross v. Early*, 746 F.3d at 561 (internal quotation and citation omitted).  Mr. Jones admitted to Trooper White that he made a Facebook post threatening to hunt down and "put a bullet in [the] head[s]" of four current or former local law enforcement officials.  Compl. Exs. 1-2. The statute under which Trooper White

charged Mr. Jones defines "terrorist act" as an act that is likely to result in serious bodily injury or damage to property and is intended to retaliate against a branch or level of government for a policy or conduct of the government.  *Id.* at § 61-6-24(a)(3)(B)(iv); Compl. Ex. 1  Obviously, putting a bullet in someone's head is an act that is likely to result in serious bodily injury. Because the threat was directed against four local law enforcement officials—based upon Mr. Jones's belief that they were either corrupt, not effectively combatting drug crime, or both (Compl. ¶ 19)—it was intended to retaliate against a branch of government (the executive branch) or a level of government (local and county) for their conduct.  Furthermore, Mr. Jones admitted to Trooper White that he made the post.[3]  Therefore, regardless of whether Mr. Jones actually intended to follow through with hunting the named individuals down and putting bullets in their head, he had knowingly and willfully threatened to do so.  Compl. Ex. 1.  Thus, Trooper White had an objectively reasonable basis to believe Mr. Jones had made a terroristic threat against a branch or level of government because of its conduct, in violation of West Virginia Code § 61-6-24(b).

Mr. Jones argues that the threat was conditioned upon something drug-related happening to one of his daughters, and therefore, it was political hyperbole, not a true threat.  Compl. ¶ 18. The text of the post does not support this argument.  The reference to something drug-related happening to one of Mr. Jones's daughters is in a separate sentence from the threat to the officers.  *Id.* at ¶ 17. ("I think he [Officer Skinner] already knows that ANYTHING drug related

---

[3] Neither Mr. Jones nor his counsel has ever denied that Mr. Jones made the posts at issue.  Instead, during the underlying criminal proceedings, Mr. Jones's counsel argued, as in this case, that the posts were protected political speech.  *See, e.g.*, Prelim. Hr'g Tr. 26:3-16, Compl. Ex. 15.  In fact, in the Complaint, Mr. Jones admits to making the post at issue.  Compl. ¶¶ 19-20 ("Mr. Jones was complaining about crime, drugs, and political corruption . . . ."; "In this post, Mr. Jones was discussing  . . . ."). Additionally, the claims in this matter are predicated upon the posts underlying the criminal charges being made by Mr. Jones:  "Defendants arrested and criminally charged Plaintiff solely due to *Plaintiff's protected speech*."  *Id.*at ¶ 62 (emphasis added).

ever happens to either of my girls, that I don't find Thorn, Murray, White, Fletcher or any of these pieces of crap to be 'Cool Mother F'ers.'"). That is, if something drug-related happened to Mr. Jones's daughters, he would not find the four officials to be "Cool Mother F'ers." But the threat to hunt these officials down and put a bullet in their heads was a separate sentence, not conditioned upon an event happening. *Id.*

Even if the threat to harm the four officials is seen as being conditioned to something drug-related happening to Mr. Jones's daughters, however, Trooper White still had probable cause to arrest Mr. Jones on the basis of the post. Mr. Jones argued in the underlying criminal case that Trooper White lacked probable cause to arrest him on the basis of this Facebook post because the threat was expressly conditioned on drug-related harm falling to his daughters, which he argued was protected political speech under *Watts v. United States*, 394 U.S. 705 (1969). Compl. Ex. 10 at 8-10. Mr. Jones pointed out that in *Watts*, the Supreme Court found that a threat to shoot the President was simply an offensive method of expressing political opposition to the President because of the conditional nature of the statement—the speaker said that if the government ever made him carry a rifle, the first person he wanted to get in his sights was President Johnson. *Id.* at 9.

The Court in *Watts*, however, looked at more than simply the conditional nature of the speaker's statement. The Court observed that the speaker's statement was conditioned upon an event that the speaker vowed would never occur—his induction into the armed forces. *Watts*, 394 U.S. at 707. Here, in contrast, whether drug-related harm befalls his daughters is not within Mr. Jones's control. Additionally, after making the statement in *Watts*, both the speaker and the crowd he was speaking to laughed. *Id.* There was no indication from Mr. Jones's Facebook post that his threat was merely a joke or political hyperbole. Thus, *Watts* has no application to the

facts of this case, and it would not prevent Trooper White from believing he had probable cause to arrest Mr. Jones.

Mr. Jones also argues that Trooper White charged him with a violation of Section 61-6-24 "in direct violation of *State of W. Va. v. Yocum*, 233 W. Va. 439 (2014)," implying that Trooper White did not have probable cause to arrest him for violating that statute.  Compl. ¶ 24. This is not true.  In *Yocum*, decided a month before Trooper White arrested Mr. Jones, the West Virginia Supreme Court upheld the constitutionality of Section 61-6-24.  *Yocum*, 233 W. Va. at 445, 759 S.E.2d at 188.  The court went on to find, however, that the allegations against the criminal defendant in that case—that he had threatened to sexually assault his arresting officer's wife and daughters—did not fall within the conduct prohibited by the statute because it was directed to the individual officer, not a branch or level of government.  *Id.* at 447, 759 S.E.2d at 190.  Here, conversely, Mr. Jones threatened four current or former local law enforcement officials because of their conduct, a threat directed to a branch or level of government.

Given the language and context of Mr. Jones's Facebook post, the Court can easily determine that an objective police officer reasonably could have believed probable cause existed that Mr. Jones violated Section 61-6-24.  At a minimum, Trooper White had arguable probable cause to support his arrest of Mr. Jones on June 26, 2015.

Turning to the two charges of July 1, 2015, Trooper White is even more clearly entitled to qualified immunity for bringing those charges against Mr. Jones.  In contrast to the initial offense, Mr. Jones was charged with and arrested for the two counts of retaliation against public officials based upon arrest warrants issued by a magistrate, who found that probable cause existed for those charges.  Moreover, a different magistrate found that probable cause existed for

the retaliation charges after a preliminary hearing where Mr. Jones was represented by counsel, who was able to argue on his behalf and cross examine the State's witnesses.

The Supreme Court has recognized, regarding qualified immunity, that "[w]here the alleged Fourth Amendment violation involves a . . . seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objectively good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).  This is because a reasonable officer cannot be expected to question the magistrate's probable cause determination, when it is the magistrate who has the responsibility under the Fourth Amendment to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant.  *Id.* at 547; *Torchinsky*, 942 F.2d at 262 ("When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983.")

Here, both charges for which Mr. Jones was arrested on July 1, 2015 were based upon warrants issued by a magistrate.  The latter two charges against Mr. Jones were based upon two separate Facebook posts.  In the first post, dated August 24, 2014, Mr. Jones encouraged heroin users to terrorize the family of Judge Martin J. Gaughan and vandalize his home:  "Hancock County Judge Martin J. Gaughan feels sympathetic to heroin users.  So please, all heroin user[s]!!  Go to the judge[']s home and take what you want, trash the place and terrorize HIS family.  He is okay with it."  Compl. Ex. 5.  This post included a link to a newspaper article in which Judge Gaughan was quoted as expressing support for therapy for drug addicts.  *Id.*, Compl. Ex. 6.  In the other post, dated July 7, 2014, Mr. Jones posted the address of former Delegate Randy Swartzmiller, along with a satellite picture of the location of his home, and

encouraged criminals to terrorize Mr. Swartzmiller and steal his property.  Compl. Ex. 7.  This post included a link to a newspaper article about how a list of wild animals prohibited from being kept as pets or livestock, which was created as a result of a bill sponsored by Mr. Swartzmiller, had caused the state Department of Agriculture to be "inundated with angry calls concerning the list and what animals should and should not be banned."  Compl. Ex. 8.  On the basis of these two posts, Trooper White charged Mr. Jones with two counts of violating West Virginia Code § 61-5-27(c)(1), which makes it a felony to threaten to injure or to cause loss of property with the intent to retaliate against a public official for the performance or nonperformance of an official duty.  Compl. Exs. 3, 4.

For both offenses, Trooper White applied for an arrest warrant from Magistrate William S. Hicks.  Magistrate Hicks found probable cause existed for both charges and issued arrest warrants.  *Id.*  Trooper White served the warrants on Mr. Jones while Mr. Jones was in court for the preliminary hearing for the initial charge.  Prelim. Hr'g Tr. 60:25-61:3, Compl. Ex. 15.[4]  On July 29, 2015, a different magistrate—Magistrate David E. McLaughlin—found there was probable cause to believe Mr. Jones committed the two offenses with which he was charged after a preliminary hearing in which Mr. Jones was represented by counsel, who had the opportunity to cross-examine the State's witnesses  and argue the law.  *Id.* at 69:1-8.

Thus, two different magistrates found probable cause for the charges of retaliation against public officials.  *See Torchinsky*, 942 F.2d at 261 (finding it "noteworthy that two

---

[4] Trooper White's sworn testimony during the preliminary hearing on the July 1st charges, and recorded in the transcript attached as an exhibit to the Complaint, flatly contradicts the unsupported allegation within the Complaint that Defendants kept Mr. Jones in custody with no criminal charges pending, following the dismissal of the initial charge.  Compl. ¶¶ 26-27.  The preliminary hearing for the initial charge was July 1, 2015.  *Id.* at ¶ 25.  The arrest warrants for the latter two charges are dated July 1, 2015. *Id.* at Exs. 3-4. The transcript of the preliminary hearing for the latter charges shows that Trooper White served Mr. Jones with the arrest warrants for the second set of felony charges while Mr. Jones was in court for the preliminary hearing on the first charge.  *Id.* at Ex. 15, 60:25-61:3.

different judicial officers in separate proceedings determined that [defendant] had demonstrated probable cause to support the arrest of the [plaintiffs]"). Although the fact that a neutral magistrate (or two) found probable cause to authorize an arrest is not dispositive of an officer's objective reasonableness, the threshold for establishing an exception is high. *Messerschmidt*, 565 U.S. at 547. The shield of immunity provided by an arrest warrant will only be lost when the warrant was based upon an affidavit so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable. *Id.* Here, Mr. Jones does not allege that Magistrate Smith lacked probable cause to issue the arrest warrants, or that Trooper White deliberately or recklessly made false statements or material omissions to the magistrate, such that the magistrate would not have probable cause to issue the warrant. *See Smith v. Almeda*, 640 F.3d 931, 937 (9th Cir. 2011). Nor does he allege that Magistrate McLaughlin acted unreasonably in finding probable cause for the charges.

In sum, Trooper White had at least arguable probable cause to believe that Mr. Jones had violated the terroristic threats statute on June 26, 2015. A neutral magistrate found probable cause to believe that Mr. Jones committed two counts of retaliation against public officials on July 1, 2015, and issued the warrants under which Trooper White arrested Mr. Jones. A different magistrate, after a preliminary hearing on the latter two counts, affirmed the existence of probable cause and bound the charges to the circuit court. The existence of probable cause or arguable probable cause to support all three charges against Mr. Jones entitles Trooper White to qualified immunity and defeats Mr. Jones's claims of violations of his First and Fourth Amendment rights. For these reasons, the Court should dismiss Counts I, II, and IV against Trooper White.

**B.    Mr. Jones Fails to Allege Any Facts to Support His Sixth and Eighth Amendment Claims Against the State Police Defendants.**

Although Mr. Jones brings claims against all Defendants for alleged violations of his Sixth Amendment right to counsel and Eighth Amendment right to be free from excessive bail, he alleges no facts to support these claims against the State Police Defendants.  For this reason, Counts III and V should be dismissed against Trooper White and Colonel Cahill.

A plaintiff "cannot assemble some collection of defendants and then make vague non-specific allegations against all of them as a group."  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).  If a plaintiff fails to allege particular facts against a particular defendant, that defendant should be dismissed.  *Id.  See also Bates v. City of Chicago*, 726 F.3d 951, 958 (7th Cir. 2013) (affirming dismissal when complaint was vague, never explained its case, and lumped defendants together without sufficient detail).

Here, Mr. Jones alleges in Count III that he was deprived of his Sixth Amendment right to counsel.  Compl. ¶¶ 76-78.  The only factual allegations to support this count, however, are that Mr. Davis and Mr. Wood issued a subpoena to Mr. Jones's counsel in an attempt to have his counsel testifiy at the preliminary hearing on the latter two charges.  *Id.* at ¶¶ 40-46.  Neither Trooper White nor Colonel Cahill is mentioned as being involved at all in attempting to have counsel for Mr. Jones testify.

Similarly, in Count V, Mr. Jones alleges that his rights under the Eighth Amendment were infringed by his bail being set "at an unreasonably high amount."  Compl. ¶ 86. As with his Sixth Amendment claim, however, he does not allege any facts to show how the State Police Defendants played any role in the setting of his bail.[5]  "[C]ourts regularly dismiss § 1983

---

[5] Mr. Jones alleges that the "Individual Defendants conspired" to deprive him of his right to counsel and to set his bail unreasonably high.  Compl. ¶¶ 76, 86.  Mr. Jones, however, does not bring a conspiracy count; nor does he allege any facts to show that the State Police Defendants "shared the same

excessive bail claims against police officers when there has been no showing that such officers actually set bail or had authority to set bail." *Lawrence v. Hansen*, No. 5:15-CV-494-BO, 2016 WL 7439343, at *2 (E.D.N.C. Dec. 22, 2016).  In West Virginia, the police do not set bail. Instead, "[t]he amount of bail shall be fixed by the court[.]"  W. Va. Code § 62-1C-3.

Because Mr. Jones has pled no facts to make it plausible that the State Police Defendants played any role in either allegedly interfering with his right to counsel or in setting an unconstitutionally high bail, Counts III and V should be dismissed against Trooper White and Colonel Cahill.

C.     **All Official Capacity Claims Against the State Police Defendants Should Be Dismissed Because Mr. Jones Cannot Seek Monetary Damages or Retrospective Declaratory Relief for Official Capacity Claims, and There Are No Plausible Allegations That Mr. Jones Faces Imminent Threat of Illegal Action by the State Police Defendants to Support an Award of Prospective Injunctive Relief.**

Mr. Jones does not allege any facts to support his official capacity claims against the State Police Defendants.  The claims against Trooper White are asserted against him in both his individual and official capacities; the claims against Col. Cahill are only asserted against him in his official capacity.  Compl. ¶ 1.  Therefore, all claims against Col. Cahill, and the official capacity claims against Trooper White, should be dismissed.

A state cannot be sued directly in its own name, regardless of the relief sought, without consent or permissible congressional abrogation of the state's sovereign immunity under the Eleventh Amendment.  *Ballenger v. Owens*, 352 F.3d 842, 844 (4th Cir. 2003).  Similarly, neither a state nor its officials acting in their official capacities are persons under Section 1983. *Orum v. Haines*, 68 F. Supp. 2d 726, 730 (N.D. W. Va. 1999) (citing *Will v. Michigan Dept. of*

---

conspiratorial objective" as the other Defendants to either interfere with his right to counsel or set his bail. *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).  For this reason, even if Mr. Jones is deemed to be asserting a civil rights conspiracy claim, he has not pled sufficient facts to make the claim plausible.

*State Police*, 491 U.S. 58, 71 (1989)).  Because a suit against a state official in his official capacity is actually not a suit against the official, but against the official's office, a suit against a state officer in his or her official capacity is no different than a suit against the state.  *Id.*; *Ballenger*, 352 F.3d at 845 (holding that, for purposes of the Eleventh Amendment, a state official acting in his or her official capacity is protected from damages).  Thus, claims against states and their officers for monetary damages and retrospective declaratory relief are barred by the Eleventh Amendment.  *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004). The Eleventh Amendment does not, however, prohibit *prospective* injunctive relief.  *Id.*

Nevertheless, an injunction is a drastic remedy, and it should not be granted unless there is "an imminent threat of illegal action."  *Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir. 1986).  "Before a court grants a permanent injunction, the court must first find necessity—a danger of future violations."  *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001). An injunction will not be granted against an action a plaintiff merely fears is liable to occur at some indefinite time in the future.  *Bloodgood*, 783 F.2d at 475.  Instead, the party seeking an injunction must show that the harm has occurred in the past and is likely to occur in the future, or offer proof that the harm is certain to occur in the near future.  *Id.*

Mr. Jones seeks two forms of non-monetary damages:  (1) a declaratory judgment that the Defendants' actions alleged in the Complaint were unlawful and violated his constitutional rights; and (2) an injunction enjoining Defendants from subjecting Mr. Jones to further actions as alleged in the Complaint.  Compl. 15.  The request for a declaratory judgment is a claim for retrospective declaratory relief, barred by the Eleventh Amendment.  *Meiners*, 359 F.3d at 1232. The request for prospective injunctive relief should be denied because Mr. Jones has not pled any

facts whatsoever to indicate that there is any possibility that he will be subjected to future arrests and criminal prosecutions based upon his Facebook posts or other purported political speech.

Mr. Jones, therefore, has not pled any facts to show that he is entitled to any permissible relief from the State Police Defendants in their official capacities. For this reason, the official capacity claims against Trooper White and all claims against Col. Cahill should be dismissed with prejudice.

## IV.   CONCLUSION

The facts pled in the Complaint, as well as the facts revealed in the documents attached to the Complaint, demonstrate that Trooper White had at least arguable probable cause to arrest Mr. Jones for the offenses for which he was charged; thus, Trooper White is entitled to qualified immunity as to the First and Fourth Amendment claims. Mr. Jones pleads no facts to show that the State Police Defendants played any role in his alleged Sixth and Eighth Amendment claims; therefore, those counts should be dismissed. Finally, Mr. Jones's official capacity claims fail because he cannot get monetary damages or retrospective declaratory relief for those claims, and he has pled no facts to show the likelihood of future injury needed to support a claim for prospective injunctive relief.

WHEREFORE, for the forgoing reasons, Defendants Michael S. White, II and Colonel J. L. Cahill respectfully request dismissal from this action and that an award for costs, including any attorney fees, be awarded to them.

Dated this 30th day of October 2017.

Respectfully submitted,


*/s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants Michael S. White, II
and Colonel J. L. Cahill*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID JONES,**

   **Plaintiff,**

**v.**              **CIVIL ACTION NO.:  5:17-CV-00100**
                  **Honorable Frederick P. Stamp, Jr.**

**MICHAEL S. WHITE, II individually
and in his official capacity as a
representative of the West Virginia State
Police; COLONEL J. L. CAHILL, in his official
capacity as Superintendent of the West
Virginia State Police; JAMES W. DAVIS, JR.,
ESQ., Individually and in his official capacity
as a representative of the Hancock County
Prosecutor's Office; JACK WOOD, ESQ., individually
and in his official capacity as a representative of
the Hancock County Prosector's Office; and
HANCOCK COUNTY, WEST VIRGINIA,**

   **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that, on the 30th day of October 2017, I filed the foregoing

"**Memorandum in Support of Defendants Michael S. White, II and Colonel J. L. Cahill's**

**Motion to Dismiss**" with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

      Jamie Lynn Crofts, Esq.
      AMERCIAN CIVIL LIBERTIES UNION
      OF WEST VIRGINIA FOUNDATION
      P.O. Box 3952
      Charleston, WV 25339-3952
      (304) 345-9246, ext. 102
      jcrofts@acluwv.org

Jerry R. Krzys, Esq.
HENDERSON, COVINGTON, MESSENGER,
NEWMAN & THOMAS CO., LPA
6 Federal Plaza Central, Suite 1300
Youngstown, OH  44503
(330) 744-1148
jkrzys@hendersoncovington.com

*Counsel for Plaintiff*

Thomas E. Buck, Esq.
BAILEY & WYANT, P.L.L.C.
1219 Chapline Street
Wheeling, WV  26003
(304) 233-3100
tbuck@baileywyant.com

*Counsel for Defendants James W. Davis, Jr., Esq.,
Jack Wood, Esq., and Hancock County, W. Va.*

*/s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants Michael S. White, II
and Colonel J. L. Cahill*