**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

DAVID JONES,

     Plaintiff,

v.                                       Civil Action No.: 5:17-CV-100

MICHAEL S. WHITE, II,
COLONEL J.L. CAHILL,
JAMES W. DAVIS, JR., ESQ.,
JACK WOOD, ESQ., HANCOCK COUNTY, W.VA.

     Defendants.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COME NOW the Defendants, James W. Davis, Jr., Esq., Jack Wood, Esq., and Hancock County, West Virginia, by and through undersigned counsel Thomas E. Buck, and Bruce M. Clark, and the law firm of Bailey & Wyant, PLLC, and asks this Court to dismiss all counts against them in this matter. In support of this Motion to Dismiss, Defendants state as follows:

## I.    INTRODUCTION AND FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

Plaintiff's claims, all of which are alleged pursuant to 42 U.S.C. § 1983, are all without merit as it pertains to Defendants Davis, Wood, and Hancock County ("Defendants"), and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff's Complaint wrongly alleges that Defendants[1] violated his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, and West Virginia Constitutional analogues, when applicable. Plaintiff's Complaint also totally disregards longstanding jurisprudential touchstones like prosecutorial immunity and qualified immunity, as well as the pleading standards

---

[1] Plaintiff's Complaint makes numerous allegations using the terminology "Defendants" and "Individual Defendants," without clarification, making it entirely unclear as to which claims are being asserted against each defendant.

articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff was arrested on June 26, 2015, by Defendant Trooper Michael S. White ("White") pursuant to W. Va. Code § 61-6-24, titled, in relevant part, "Threats of terrorist acts," for a statement he made on Facebook, as follows:

> It is time to have Skinner's ass FIRED. He is a worthless piece of crap who should not be a cop.
>
> I think he already knows that ANYTHING drug related ever happens to either of my girls, that I don't find Thorn, Murray, White, Fletcher or any of these pieces of crap to be "Cool Mother F'ers". And I will hunt them down and put a bullet in their head.
>
> How in the hell are these ass hole getting deputized and many claiming to be DEA. ROFL. We all know that is a joke.

> EXHIBIT
> 2

Docket No. 1-2. At Plaintiff's initial appearance on this charge, the defendant prosecutors voluntarily dismissed this terrorism charge. Two different charges were then made setting forth two violations of W. Va. Code § 61-5-27(c)(1)(e), titled, in relevant part, "Intimidation of and retaliation against public officers and employees, jurors, and witnesses." These charges were based on two other Facebook posts by Plaintiff, as follows:

 **David Jones**
Jul 7, 2014 at 7:04am · 🌐

Hancock County Judge Martin J. Gaughan feels sympathetic to heroin users.

So please, all heroin user!! Go to the judges home and take what you want, trash the place and terrorize HIS family. He is okay with it.

And don't forget the nasty New Cumberland mayor on Ridge Ave who hides behind her home security system.

Help yourself. They are okay with it.

 **Juvenile courts see share of addiction - ReviewOnline.com | News, sports,...**
www.reviewonline.com

6 comments                    APPENDIX

 EXHIBIT

5

6.

 **David Jones**
Aug 24, 2014 at 8:06am · 🌐

Dear Criminals and Crackheads,
Please go to this address
Randy Swartzmiller
216 Heartwood Dr
Chester, WV 26034
and do everything you have done to terrorize other citizens of Hancock County. Help yourself to his stuff. Obviously he does not care. Camp out in woods and stay as long as you like.

🔍 Chester, West Virginia                    ✕

EXHIBIT

7

3

Docket No. 1-5, 1-7.[2]

Defendant Jones then responded to the media following Plaintiff's arrest, explaining briefly the reasoning behind the charges. Docket No. 1-11. After Plaintiff was charged with these crimes and while he was being held in jail, Plaintiff's nephew, Jerry R. Krzys, Esq., along with West Virginia House of Delegates Representative Pat McGeehan and Plaintiff's friend Lisa Jones came to visit Plaintiff. In his Complaint, Plaintiff alleges that the purpose of Krzys' visit was apparently to solicit legal business from his incarcerated uncle. Docket No. 1-13, p. 1, ¶ 2. However, there is no question that Krzys was not alone, but rather was with two other people when he visited Plaintiff. More importantly, Krzys was not a licensed attorney in the State of West Virginia at the time.

Defendant Prosecutors issued a subpoena for Mr. Krzys so that he could testify about the substance of his conversations with Plaintiff. Docket No. 1-12. All three visitors were subpoenaed for the same reason. Mr. Krzys did file a motion to appear *pro hoc vice*, which was eventually granted. Accordingly, the subpoena was quashed at the preliminary hearing. Docket No. 1-15, p. 6:20 – 7:8. The Magistrate Court found probable cause for Plaintiff's arrest pursuant to W. Va. Code § 61-5-27(c)(1) and bound the case over to the Hancock County grand jury. Docket No. 1-15, p. 69:6 – 69:9.

## II.      STANDARDS OF LAW

### a.      Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits Defendants to assert a defense that Plaintiff failed to "state a claim upon which relief can be granted" by motion.

---

[2] The former post contains a link to an article detailing Judge Gaughan's work with teenage drug addicts. The latter post offers directions to Mr. Swartzmiller's home, and also contains a link to an article dealing with the State Dangerous Wild Animals board with which Mr. Swartzmiller was involved.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a Complaint . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) Motion to Dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal* at 662; *see also Twombly* at 570.

*Iqbal* explains that "[a] claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal* at 662. Further, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. Likewise, a complaint does not suffice if "it tenders naked assertions devoid of further factual enhancement." *Iqbal* at 662.

### b.  Prosecutorial Immunity

Common law prosecutorial immunity is recognized by both federal and state courts as a bar to civil action against prosecutors for their actions. "It is well settled that prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are absolutely immune from civil suit." *Safar v. Tingle*, 859 F.3d 241, 248 (4th Cir. 2017) *(citing Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Similarly, the West Virginia Supreme Court has explained:

> Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process.... It has been said that absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding.

*Jarvis v. W. Virginia State Police*, 227 W. Va. 472, 478, 711 S.E.2d 542, 548 (W. Va. 2010) (*citing*

*Mooney v. Frazier*, 225 W.Va. 358, 370 n. 12, 693 S.E.2d 333, 345 n. 12 (2010), quoting Franklin

D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules*

*of Civil Procedure*, § 8(c), at 213 (3d ed.2008) (additional citations omitted).

Prosecutorial immunity, like other types of immunity, constitutes immunity from suit. The West

Virginia Supreme Court explained:

> Immunities under West Virginia law are more than a defense to a suit in that they
> grant governmental bodies and public officials the right not to be subject to the
> burden of trial at all. The very heart of the immunity defense is that it spares the
> defendant from having to go forward with an inquiry into the merits of the case.

*Hutchison v. City of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996); see also

*Robinson v. Pack*, 223 W. Va. 828, 831, 679 S.E.2d 660, 663 (2009) (holding that claims of

immunity should be 'summarily decided' before trial).

### c.   Qualified Immunity

It is well established that "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *Prichett v.*

*Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

> Furthermore, it has been held that:
>
> Qualified immunity in a civil rights action is an entitlement not to stand trial or face
> other burdens of litigation. Because the entitlement is an immunity from suit rather
> than a mere defense to liability, the Supreme Court of the United States has stressed
> the importance of resolving immunity questions at the earliest possible stage in
> litigation. Additionally, the determination as to whether an officer acted with
> objective reasonableness necessary to entitle him to qualified immunity is a
> question of law for the Court. (Internal citations omitted)

*Greene v. Welch*, 822 F.Supp. 1236; 1993 U.S. Dist. LEXIS 7814 (S.D.W.Va. 1993) *citing Mensh v. Dyer*, 956 F.2d 36 (4th Cir. 1991); *Hunter v. Bryant*, 116 L.ed.2d 589, 112 S.Ct. 534 (1991); *Torchinsky v. Siyinski*, 942 F.2d 257 (4th Cir. 1991).

### III.   SUMMARY OF THE CLAIMS ASSERTED AGAINST DEFENDANTS DAVIS, WOOD, AND HANCOCK COUNTY.

Plaintiff's allegations against these Defendants Davis, Wood, and Hancock County are not entirely clear. First, the claims against the County are not clear given that his Complaint does not specifically allege that the County was involved in this case in any way. Second, the claims against defendants Davis and Wood are not readily discernable due to the Plaintiff's insistence on using the term "individual defendants" without specificity. Even the most charitable reading of the complaint, however, appears to limit the complaints against these defendants to the following general claims:

1. Defendants Davis and Wood prosecuted Plaintiff with two violations of W. Va. Code § 61-5-27(c)(1)(e) for the aforementioned Facebook posts; Plaintiff alleges that this amounted to malicious prosecution.

2. Defendant Davis allegedly made "inflammatory statements" to the media regarding the merits of Plaintiff's criminal case and somehow this routine process violated Plaintiff's constitutional rights.

3. Defendants Davis and Wood attempted to subpoena Jerry R. Krzys, Plaintiff's nephew and somehow the in doing so violated Plaintiff's constitutional right to counsel.

4. Defendants Davis and Wood "conspired" with other Defendants to set Jones' bail too high and in doing so violated his constitutional rights when these defendants don't even set bail.

None of these claims are viable on their face. Even taking every allegation made by Plaintiff in this Complaint as true, Plaintiff has failed to state claims upon which relief can be granted. Defendants are protected by multiple layers of immunity, all of which require specific standards to be met before a lawsuit can proceed. In short, Defendants Davis and Wood are protected by prosecutorial immunity for any action they allegedly took as part of the judicial phase of the criminal process. Any actions they allegedly took as part of non-prosecutorial discretionary functions are similarly protected by qualified immunity. Finally, Hancock County cannot be a party to any federal or state constitutional claims unless Plaintiff meets a specific set of requirements, which he also has not done. In short, the suit against Defendants does not meet any of the necessary standards of either pleading or of other substantive law, and must be dismissed by this Court.

## IV.    ARGUMENT

### a. DEFENDANTS ARE IMMUNE FROM LIABILITY IN CONNECTION WITH ANY SECTION 1983 CLAIM BASED UPON MALICIOUS/VINDICTIVE PROSECUTION IN THIS CASE.

#### i.  Prosecutorial Immunity.

As stated above, the first claim that Plaintiff seems to assert against these defendants is based upon Plaintiff being charged with two violations of Retaliation against Public Officers pursuant to W. Va. Code § 61-5-27(c)(1). Plaintiff seems to allege that by prosecuting him with these crimes, Defendants violated his constitutional rights. However, it is clear that this claim, on its face, cannot succeed. There is no question that Defendants, Davis and Wood, are and were at all times relevant to this complaint county prosecutors. Further, it is clear that by bringing this claim, Plaintiff has attempted to bring a Section 1983 claim against these prosecutors based upon their decision to proceed prosecution against him. The United States Supreme Court has quite

conspicuously addressed claims like this and in doing so has overtly held that prosecutors are absolutely immune from such claims. Specifically, the Supreme Court has stated that "state prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case." *Burns v. Reed*, 500 U.S. 478, 479 (1991) (citing, in part, *Imbler v. Pachtman*, 424 U.S. 490 (1991)); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) ("absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding.").

This is generally the beginning and end of the argument with regard to these claims. Plaintiff is unhappy that he was charged with crimes. He now wishes to sue the prosecutors that prosecuted him. The law is clear – he cannot do this. Not only are these prosecutors immune from liability with regard to these claims, but they are immune from this suit itself. *Safar v. Tingle*, 859 F.3d 241, 248 (4th Cir. 2017). Thus, these defendants are immune from any claim, whether brought pursuant to Section 1983 or otherwise, in connection with their decision to prosecute and present a criminal case against Plaintiff. Accordingly, these claims against these defendants should be dismissed as a matter of law.

### ii. Qualified Immunity

Even if these defendants were not entitled to absolute prosecutorial immunity, which they clearly are, they would still be immune from these claims based upon qualified immunity. There is no question that prosecutors are government officials and in addition to prosecutorial immunity they are also entitled to qualified immunity. *Lace v. Maricopa County*, 693 F.3d 89683 Fed.R.Serv.3d 564 (9th Cir. 2012). Further, qualified immunity protects government officials, like the defendants, unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

2738 (1982); *Prichett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). This is to say that, "when properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731131 S.Ct. 2074179 L.Ed.2d 1149 (2011).

Plaintiff has not alleged and could never create a question whether these defendants were "plainly incompetent" and/or whether they clearly violated the law, when they prosecuted Plaintiff for two violations of  W. Va. Code § 61-5-27(c)(1). The answer to this question is clearly no. As Plaintiff alleges in his complaint, these defendants prosecuted him for two violations of W. Va. Code § 61-5-27(c)(1). Not only were these charges not illegal, but they were actually completely appropriate and called for given the available facts and evidence.

This statute provided that it was illegal for individuals to cause or threaten to cause harm to public officials in retaliation for said public official's performance or nonperformance of an official duty. W. Va. Code § 61-5-27(c)(1)(2002 through Reg. Sess.). Further, the Facebook posts at issue, both of which Plaintiff has admitted to posting, establish probable cause that Plaintiff violated this law.

July 7, 2014, Plaintiff admittedly posted a link to an article detailing Judge Gaughan's work with teenage drug addicts. *See:* Pg. 3, supra. Above this link, Plaintiff stated that Judge Gaughan was sympathetic to drug users, and Plaintiff then urged "heroin users" to go to Judge Gaughan's home, "trash the place and terrorize HIS family." Docket No. 1-5. He then urged "heroin users" to also go to the home and terrorize the family of the Mayor of New Cumberland as well. *See:* Pg. 3, supra.

Based on this post, Plaintiff was clearly angry at Judge Gaughan and the New Cumberland Mayor based upon their performance or nonperformance of their official duties, i.e. enforcement

of drug laws. He therefore, as a form of retaliation, encouraged criminals to cause physical damage to the homes and commit violence against the families of these public officials. This is the exact type of behavior that W. Va. Code § 61-5-27 prohibits. Thus, charging Plaintiff with a violation of  W.Va. Code § 61-5-27 seems to have been appropriate. Further prosecuting this charge certainly cannot be characterized as "plainly incompetent" or a "knowing violation of the law" as would be required by federal immunity jurisprudence. Clearly, defendants are entitled to qualified immunity with regard to this claim.

The second count at issue involves a Facebook post that Plaintiff admittedly posted on August 24, 2014. In this post, Plaintiff provided a link to an article which discussed Representative Randy Swartzmiller and his involvement with the State Dangerous Wild Animals board. Plaintiff then provided Represented Swartzmiller's home address, with a Google link, and instructed "criminals and crackheads" to go the Representative Swartzmiller's home, terrorize him, and steal his personal belongings. Docket No. 1-5, 1-7.

Again, there is no question that Representative Swartzmiller was a public officer pursuant to the definition provided in W.Va. Code § 61-5-27(a)(5). Further, there was no dispute that Plaintiff created and published this Facebook post. This post clearly indicates that Plaintiff is dissatisfied with the manner in which Representative Swartzmiller is performing his official duties. Finally, this post threatens and/or attempts to cause harm to Representative Swartzmiller's person and property as retaliation for his perceived nonperformance of duties. Like Plaintiff's July 7, 2014 post, this post seems to fit squarely within the type of illegal activity, which is described by W.Va. Code § 61-5-27. The facts and law surrounding this issue are not in dispute. Plaintiff's admitted actions fit the language of W.Va. Code § 61-5-27, and the defendants acted appropriately when they charged him pursuant to this statute. Defendants certainly were not "plainly incompetent"

when filing this charge. The charges were clear and appropriate. Thus, it is clear that they are entitled to qualified immunity from any claim asserted against them in connection with them prosecuting this charge.

Overall, the West Virginia Code, in effect at the time, clearly prohibits citizens from threatening or attempting to cause harm to public officials with the intent to retaliate against these officials. Plaintiff admittedly published two Facebook posts in which he expressed dissatisfaction with public officials and then attempted and/or threatened to harm these public officials. Based on these posts, the defendant prosecutors prosecuted Plaintiff with two crimes. On its face, this fact pattern does not sound strange or differ from the timeline of any other prosecution. The State has a clear criminal statute. A person commits two separate acts that seem to violate the statute. The county prosecutors prosecute this person for two crimes. Nothing about the facts or the manner in which Plaintiff was charged with these crimes indicates that these defendants were "plainly incompetent" or "knowingly violated the law." Thus, these defendants are entitled to qualified immunity not only from these claims but from this suit itself. These claims must be dismissed as a matter of law.

### b. DEFENDANTS ARE IMMUNE FROM LIABILITY IN CONNECTION WITH ALLEGATIONS THAT THEY MADE "INFLAMMATORY STATEMENTS" TO THE MEDIA REGARDING PLAINTIFF'S CRIMINAL CASE.

#### i. Plaintiff's allegations regarding "inflammatory statements" do not support any cognizable claim.

From his Complaint, it seems Plaintiff may also be asserting a claim against Defendant Wood and/or Defendant Davis based upon allegations that they made "inflammatory statements" to the press. This claim cannot proceed for a wide variety of obvious reasons. First, making "inflammatory statements" is not a civil claim. Absent allegations that a statement is libelous or

slanderous, the mere allegation that a statement is "inflammatory" is not actionable in the law.[3]

Plaintiff does not assert a libel or slander claim in his Complaint. Here merely characterizes

defendant's statements as "inflammatory." This simply does not describe any claim for relief.

Secondly, even if the mere allegation that a statement was "inflammatory" was sufficient

to state a claim, it is clear that no such claim would exist in this case. When filing his Complaint,

Plaintiff provided a copy of the newspaper article that included the alleged "inflammatory

statements." In this article, the prosecutors were asked to comment on the charges filed against

Plaintiff, and specifically why the terrorism charge was dismissed and refiled as a retaliation

charge. Specifically, this article states:

> Neither Wood nor Hancock County Prosecutor Jim Davis would elaborate
> on why the terrorist threat charges were dropped.
>
> "It's just that the ones we're pursuing are much more specific and are very
> appropriate," Davis said. "It's just a better way to go."

Docket No. 1-11. Nothing about this statement is "inflammatory." The article goes on to state:

> Davis said the case is not so much about free speech than about the proper
> use of free speech.
>
> "People have free speech, but you can't yell 'fire' in a crowded theater. ...
> You have to be responsible about it," he said.

Docket No. 1-11. These statements are about as generic as could be. If statements such as these

were "inflammatory," nearly every lawyer and politician in this country would be faced with

insurmountable liability. No reasonable juror, judge, or person could conceivably characterize

these statements as "inflammatory."

---

[3] Plaintiff, of all people, should be aware that making inflammatory statements is not actionable considering he
routinely makes public requests for people to be terrorized and for homes to be looted.

Overall, no civil claim exists based upon allegations that a defendant made "inflammatory statements." Further, there is no evidence that any statement made by defendants could possibly be characterized as "inflammatory." Thus, it is clear, as a matter of law, that Plaintiff cannot succeed with regard to any claim based upon allegations that defendants made "inflammatory statements" about him. Any claim based on these allegations must therefore be dismissed.

### ii.  Qualified immunity

Further, even if an "inflammatory statement" claim did exist and even if defendants did make "inflammatory statements" to the media, it is still clear that these defendants would be entitled to qualified immunity with regard to this hypothetical claim. As is stated above, there is no question that county prosecutors are public officials and are entitled to qualified immunity in connection with discretionary functions. *Hunter v. Bryant*, 116 L.ed.2d 589, 112 S.Ct. 534 (1991); *Torchinsky v. Siyinski*, 942 F.2d 257 (4th Cir. 1991). Further, county prosecutors are responsible for charging criminals with crimes and keeping the public apprised as to what charges have been filed. Thus, there is no question that addressing the media regarding the details of pending criminal charges is a part of a county prosecutor's job, and what prosecutors say to the media is certainly discretionary. There can generally be no dispute that county prosecutors are entitled to qualified immunity with regard to any allegations that they "made inflammatory statements" to the media.

Again, as is clearly demonstrated from the article itself, the statements that these defendants actually made were relatively tame. These statements certainly did not violate any law, nor did they demonstrate any incompetence on the part of the defendants. *Ashcroft v. al-Kidd,* 563 U.S. 731 131 S.Ct. 2074 179 L.Ed.2d 1149 (2011). Thus, defendants are immune from any liability with regard to any claim, imaginary or otherwise, resulting from "inflammatory statements."

### c.  DEFENDANTS ARE IMMUNE FROM LIABILITY IN CONNECTION WITH THE SUBPOENA THAT WAS ISSUED TO JERRY KRZYS IN PLAINTIFF'S CRIMINAL CASE.

#### i.  Prosecutorial Immunity

Plaintiff's next claim is that defendants attempted to violate his constitutional right to counsel, by subpoenaing his nephew, Jerry Krzys. Given the allegations and information provided by Plaintiff, himself, in his complaint, it is clear that this claim cannot proceed for several reasons. First, the claim generally cannot proceed because defendants are entitled to prosecutorial immunity not only with regard to liability but also with regard to litigating this claim. As has been stated repeatedly herein, there is no question that these defendants were prosecutors. These defendants filed criminal charges against Plaintiff and proceeded to prosecute these charges. During the course of this prosecution, defendants issued a subpoena to Plaintiff's nephew, Jerry Krzys. Federal Courts have repeatedly stated that "it is well settled that prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are absolutely immune from civil suit." *Safar v. Tingle*, 859 F.3d 241, 248 (4th Cir. 2017) *(citing Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976))*. There can be no debate that subpoenaing a witness in a criminal case is a prosecutorial activity that is "intimately associated with the judicial phase of criminal process." Thus, the defendants are absolutely immune from liability from any claim based on them subpoenaing Plaintiff's nephew or anyone else for that matter.

The long-standing case law and underlying public policy are abundantly clear. Prosecutors simply cannot be sued in connection with prosecutorial activities including but not limited to subpoenaing witnesses. In this case, Plaintiff has attempted to sue the defendant prosecutors based on prosecutorial activities. Therefore these claims cannot proceed as a matter of law.

#### ii.  Qualified Immunity

15

Even if defendants were not entitled to absolute immunity in connection with subpoenaing Plaintiff's nephew, given the facts surrounding this claim, they would still be entitled to qualified immunity with regard to this claim. Generally, the pertinent facts surrounding this claim are not in dispute. Plaintiff was charged with two felony counts of Retaliation under W. Va. Code § 61-5-27. While he was being held on these charges, Plaintiff was visited in jail by his nephew, Jerry R. Krzys, along with West Virginia House of Delegates Representative Pat McGeehan and Plaintiff's friend Lisa Jones. All three individuals who spoke with the Plaintiff were subpoenaed. Defendants believed that this conversation between Plaintiff and these three other people may have been pertinent to the criminal case, so they issued a subpoena to Mr. Krzys. It is not unusual to subpoena witnesses who spoke with a criminal defendant. In his Complaint, Plaintiff attempts to give the Court this impression that Mr. Krzys was his attorney when defendants subpoenaed him, but given the documents that he provided, this clearly is not true. Docket 1-13. To the contrary, there is no question that Jerry R. Krzys was not Plaintiff's attorney of record when this subpoena was issued. Plaintiff attorney of record was Attorney Philip Sbrolla at the time that this subpoena was issued. *Id.* Further, Jerry R. Krzys could not have been Plaintiff's attorney of record at the time this subpoena was issued because he was not even licensed to practice law in the State of West Virginia and no court had given him permission to practice in the State of West Virginia. Thus, for Plaintiff to allege that his nephew was his attorney of record is clearly false. It must also be pointed out that Jerry R. Krzys met with Plaintiff as a mere visitor in the presence of 2 other visitors, so any conversation that he had with Plaintiff at the jail clearly was not protected by any attorney client privilege. In summary, defendants issued a subpoena to Plaintiff's family member, who was not and could not legally have been his attorney at that time. Again these facts are established from the documents that Plaintiff himself has provided with his Complaint.

As has been stated repeatedly, these defendants, as prosecutors, are entitled to qualified immunity with regard to discretionary functions of their jobs. Without question, deciding what testimony is needed in a case and who to subpoena in order to get this testimony is a discretionary function of a prosecutor's job. Thus, these defendants are generally immune from suits challenging who they choose to subpoena. Further, there is no law or rule precluding a prosecutor from subpoenaing an individual who is not a criminal defendant's attorney of record and is not even licensed to practice in the state in which criminal charges are pending. Such a rule would be absurd. Given the alleged facts in this case, it is clear that issuing a subpoena to Plaintiff's nephew, Jerry R. Krzys, did not violate any law and did not demonstrate that defendants were "plainly incompetent." *Ashcroft v. al-Kidd,* 563 U.S. 731131 S.Ct. 2074179 L.Ed.2d 1149 (2011). Thus, these defendants are clearly immune from any claim asserted in connection with the subpoena issued to Plaintiff's nephew, Jerry Krzys.

### iii.  Plaintiff's Constitutional Right to an Attorney was not violated

Even if defendants were not entitled to absolute prosecutorial immunity and even if they were not entitled to qualified immunity, this claim would still not be viable as a matter of law. A review of Plaintiff's complaint reveals that Plaintiff is alleging that by subpoenaing his nephew, defendants violated his Sixth Amendment Right to Counsel. However, the uncontroverted facts do not support this claim on its face. First, as is described above, Jerry Krzys was not Plaintiff's attorney at the time that he was issued a subpoena. Mr. Krzys could not possibly serve as Plaintiff's attorney at the time this subpoena was issued. Therefore, it is clear that defendants could in no way affect Plaintiff's right to counsel by subpoenaing Mr. Krzys. Moreover, Plaintiff was never without an attorney, at any point during his entire criminal case. There is no question that Plaintiff retained Attorney Phillip Sbrolla to represent him and Attorney Sbrolla did in fact represent Plaintiff.

Throughout his criminal case, Plaintiff was at all times represented by the attorney of his choice. Plaintiff's Sixth Amendment rights simply were not violated. Because Plaintiff was never actually deprived of his right to an attorney, it is clear that his right to counsel was not actually violated. The actions complained of in his complaint did not harm him in any way.

There is no question that an alleged constitutional violation that causes no harm to anyone is not actionable. When addressing constitutional claims such as this, courts have clearly held that,

> There is no tort without an injury… a litigant may not complain about a violation of rights that does not harm the interest (whether in privacy or in a fair trial) that the rights protect. (There are no "attempted torts.") The principle is applied to virtually all errors, including constitutional errors, that occur in the course of a criminal trial.

*U.S. v. Stefonek*, 179 F.3d 1030 (7th Cir. 1999) quoting S*ullivan v. Louisiana*, 508 U.S. 275, 278–79, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *United States v. Marzano*, 160 F.3d 399, 401 (7th Cir.1998).

Thus, it is clear that this claim cannot proceed. Plaintiff has brought a claim based upon the alleged violation of his Sixth Amendment Right to Counsel. However, there is no question that Plaintiff had the counsel of his choice throughout his criminal case. Plaintiff's right to counsel was not violated and he was not harmed by the alleged actions of defendants. Therefore, it is clear that this claim must be dismissed as a matter of law.

### d. DEFENDANTS CANNOT BE LIABLE IN CONNECTION WITH A CLAIM THAT THEY "CONSPIRED" TO SET PLAINTIFF BAIL TOO HIGH.

#### i. Facts simply do not support a claim that these defendants set Plaintiff's bail too high.

Next, in his Complaint, Plaintiff alleges that the "individual defendants initially set [his] bail at an unconstitutional [amount]." Complaint, Docket 1, ¶57. This claim is clearly baseless. The individual defendants are prosecutors. Prosecutors do not "set bail". Judge's set bail. Thus, if

Plaintiff was unhappy with the amount of his bail, then his disagreement is with the presiding judge and not with these defendants. Plaintiff has not named any judge in this case, nor could he due to the clear judicial immunities. No constitutional claim can proceed against these defendants based on "setting" bail.

### ii. Prosecutorial Immunity

Even if Plaintiff could describe some theoretical claim against the defendant prosecutors in connection with the amount of his bail, said claim would still be precluded by prosecutorial immunity. Again, the ultimate decision regarding the amount of bail that is appropriate for a given charge rests upon the presiding judge. The only involvement that prosecutors have with regard to bail is to request an amount of bail and explain to the presiding judge why they believe it is appropriate. As is repeatedly stated above, prosecutors are entitled to absolute immunity in connection with activities that are "intimately associated with the judicial phase of the criminal process." *Safar v. Tingle*, 859 F.3d 241, 248 (4th Cir. 2017). Courts have repeatedly held that,

> A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) **conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing,** (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made."

*Buckley*, 509 U.S. at 272, 113 S.Ct. at 2615(emphasis added)(quoting *Imbler*, 424 U.S. at 431, 96 S.Ct. at 995–996); *Van de Kamp*, 555 U.S. at 434, 129 S.Ct. at 861; *Dababnah v. Keller–Burnside*, 208 F.3d 467, 471–472 (4th Cir.2000). Thus, there is no question that when requesting bail in a criminal case, prosecutors are performing activities that are "intimately associated with the judicial process." Therefore, to the extent any claim can factually concocted against these defendants based on the amount of Plaintiff's bail, said claim must be dismissed as a matter of law.

### iii. Qualified Immunity

Even if this claim was factually plausible and even if these defendants were not entitled to prosecutorial immunity in connection with this claim, they would still be entitled to qualified immunity. There is no question that making a request for a specific amount of bail is within a prosecutor's job duties. Further, there is no question that the amount of bail that a prosecutor requests is discretionary in nature. Thus, prosecutors are generally entitled to qualified immunity in connection with claims based upon the amount of bail they request. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *Prichett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

Additionally, in this case, there is no question that the Plaintiff was charged with two counts of violating W. Va. Code § 61-5-27(c) both of which were felony charges. W. Va. Code § 61-5-27(e). In connection with these charges, Plaintiff's bail was set at $50,000. With these facts in mind, it is clear that the defendants are entitled to a qualified immunity.

Generally, bail in the amount of $50,000 for a person who is charged with two felonies does not raise red flags with regard to anyone constitutional rights. This amount of bail is not unreasonable in the least and certainly does not violate any law. Thus, it is clear that even if the amount of bail that was set could somehow be attributed to the prosecutors and not the presiding judge, these prosecutors still could not be found to be incompetent or in violation of any law in this case. They are therefore entitled to qualified immunity with regard to these claims and these claims must be dismissed as a matter of law.

### e. PLAINTIFF'S COMPLAINT DOES NOT SUFFICIENTLY PLEAD ANY CLAIM AGAINST HANCOCK COUNTY, AND HANCOCK COUNTY SHOULD THEREFORE BE DISMISSED FROM THIS CASE.

Plaintiff has named Hancock County as a defendant in this case, but a thorough review of his Complaint reveals that Plaintiff has not provided any legal or factual pleading to support a claim against Hancock County. See generally: Docket 1. There is no question that in order to assert a claim, a party must provide a short and plain statement of the claim. Specifically, the Fourth Circuit Court of Appeals recently summarized the pleading requirement as follows:

> To survive a motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), meaning that it must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[P]laintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

*Loftus v. Bobzien*, 848 F.3d 278, 284 (4th Cir. 2017) (citations in original). Moreover, the United States Supreme Court and many other courts have repeatedly held that "the requirement that pleading contain a short and plain statement of claim showing that pleader is entitled to relief does not require detailed factual allegations, but demands more than unadorned "the defendant unlawfully harmed me" accusation." *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) citing Fed. Rules Civ. Proc. Rule 8(a)(2), 28 U.S.C.A.

In this case, Plaintiff does not provide even one factual allegation that Hancock County committed any tort or damaged him in any way. His complaint is devoid of any allegations that the county acted inappropriately. The Complaint lists Hancock County as a defendant in the Caption but does not actually describe a claim against the County. Thus, the analysis described in *Iqbal* becomes very easy. Plaintiff simply has not pled any claim with the particularity required by Federal Courts and Hancock County should therefore be dismissed from this case.

### f. MONETARY DAMAGES ARE NOT AVAILABLE IN REGARD TO PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS, AND THESE CLAIMS ARE THEREFORE MOOT.

In his Complaint, Plaintiff has asserted several claims against defendants alleging that his rights under the United States Constitution were violated. He has also defendants' actions violated his West Virginia Constitutional rights. Further, Plaintiff has requested monetary damages in connection with his claims. *See:* Complaint, Docket No. 1, ¶57. However, unlike its federal counterpart, the West Virginia Constitution does not contain any provision or law such as 42 U.S.C. § 1983 allowing for money damages. See generally: W. Va. Const. Art. III. Thus any claim for money damages as a result of these alleged state constitutional violations must fail.

Conversely, it has been held that a court may award injunctive relief in connection with a violation of the West Virginia Constitution. *Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322 (W. Va. 1980). However, in this case, even assuming *arguendo* that the alleged violations occurred, it is clear that any claim for injunctive relief is moot. In his Complaint, the only injunctive relief that is requested is for an order enjoining defendants from "subjecting Mr. Jones to the conditions set forth in the Complaint." See Complaint, Docket No. 1, pg. 15. The precise meaning of this request is unclear. However, regardless of its meaning, it is clear that no injunctive relief is available in this case. Plaintiff is not currently incarcerated in connection with the charges at issue in his Complaint. Further, upon information and belief, the criminal charges described were resolved in the criminal court and are no longer pending. The matter was transferred to another county and was not handled by these defendants. Thus, it is clear that Plaintiff's complaint does not describe any current or ongoing constitutional violation. The only violations that are alleged have already occurred and are in the past. No injunctive relief is available with regard to these

allegations. Therefore, it is clear that even if Plaintiff could establish a state constitutional violation, no relief would be available at this point, and his claim would therefore be moot.

Overall, Plaintiff has alleged that his state constitutional rights were violated. However, there is no provision to allow for him to receive money damages in connection with this claim. Further there is no conceivable injunctive relief that would remedy the alleged violations even if they were proven. Thus, it is clear that no relief can be granted in connection with this claim, and it should therefore be dismissed as a matter of law.

JAMES W. DAVIS, JR., ESQ.,
JACK WOOD, ESQ., HANCOCK
COUNTY, W.VA
By Counsel

Thomas E. Buck, Esq.
W. Va. Bar ID #6167
Benjamin P. Visnic, Esq.
W. Va. Bar ID # 12289
BAILEY & WYANT, P.L.L.C.
1219 Chapline Street
Wheeling, WV 26003
Telephone: (304) 233-3100
Fax: (304) 233-0201

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

DAVID JONES,

     Plaintiff,

v.                                                                          Civil Action No.: 5:17-CV-100

MICHAEL S. WHITE, II,
COLONEL J.L. CAHILL,
JAMES W. DAVIS, JR., ESQ.,
JACK WOOD, ESQ., HANCOCK COUNTY, W.VA.

     Defendants.

## CERTIFICATE OF SERVICE

Service of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was as had upon the following by Electronically filing, this _30_ day of OCTOBER,  2017:


Jamie Lynn Crofts, Esq.
ACLU-WV
P.O. Box 3952
Charleston, WV 25339


Thomas E. Buck, Esq.
W. Va. Bar ID #6167
Benjamin P. Visnic, Esq.
W. Va. Bar ID # 12289
BAILEY & WYANT, P.L.L.C.
1219 Chapline Street
Wheeling, WV 26003
Telephone: (304) 233-3100
Fax: (304) 233-0201