IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


DAVID JONES,

     Plaintiff,

v.                               Civil Action No. 5:17CV100
                                           (STAMP)
MICHAEL S. WHITE, II, individually
and in his capacity as a representative
of the West Virginia State Police,
COLONEL J.L. CAHILL, in his official
capacity as Superintendent of
the West Virginia State Police,
JAMES W. DAVIS, JR., ESQ., individually
and in his official capacity
as a representative of the
Hancock County Prosecutor's Office
JACK WOOD, ESQ., individually
and in his official capacity
as a representative of the
Hancock County Prosecutor's Office
and HANCOCK COUNTY, WEST VIRGINIA,

     Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTIONS TO DISMISS**

I.  Background

The plaintiff, David Jones, filed a complaint in this Court, in which he asserts five counts under 42 U.S.C. § 1983 against the five defendants. The complaint arises out of posts on the plaintiff's Facebook page that complain about local law enforcement officers and were viewed as an online threat made to multiple public officials. Defendant Michael S. White, II ("Trooper White") learned of a Facebook post about several public officials from another law enforcement officer, and then went to the plaintiff's

house to ask him about the post. The plaintiff admitted that he had made the post, and Trooper White then arrested the plaintiff and charged him with one felony count of making terroristic threats. The initial charge was based on a Facebook post dated June 24, 2015. On the date of the preliminary hearing on the initial charge, the State voluntarily dismissed the initial charge and instead charged the plaintiff with two felony counts of retaliation against public officials.

The two new charges were based on two of the plaintiff's Facebook posts from the previous year. Trooper White obtained arrest warrants from the magistrate on the two new charges. Defendants James W. Davis, Jr., Esq. ("Mr. Davis") and Jack Wood, Esq. ("Mr. Wood"), the prosecutor and assistant prosecutor, issued a subpoena to have the plaintiff's nephew, an attorney, testify at the preliminary hearing on the two new charges. The plaintiff's nephew had visited the plaintiff in jail along with two other individuals. At the preliminary hearing on the two new charges, the magistrate found that there was probable cause to believe the plaintiff had committed both offenses and bound the case over to the Circuit Court of Hancock County, West Virginia. The plaintiff alleges that his bail was set at $200,000.00 for the initial charge and $50,000.00 for the two new charges. All charges against the plaintiff were later dismissed.

Count I of the complaint alleges violations of the First Amendment of the United States Constitution and Article III, § 7 of the West Virginia Constitution; Count II alleges violations of the Fourth Amendment of the United States Constitution and Article III, § 6 of the West Virginia Constitution; Count III alleges violations of the Sixth Amendment to the United States Constitution; Count IV alleges vindictive prosecution in violation of the Fourteenth Amendment of the United States Constitution; and Count V alleges excessive bail in violation of the Eighth Amendment to the United States Constitution and Article III, § 5 of the West Virginia Constitution. For relief, the plaintiff seeks a declaratory judgment that the defendants' alleged actions were unlawful and violated his rights, an injunction to prohibit the defendants from subjecting the plaintiff to the conduct alleged in the complaint in the future, compensatory damages, and attorneys' fees and costs.

Defendants Mr. Davis, Mr. Wood, and Hancock County, West Virginia ("Hancock County") have filed a motion to dismiss all counts against them in this matter. Defendants Trooper White and Colonel J. L. Cahill ("Colonel Cahill") (collectively, the "State Police defendants") have also filed a motion to dismiss with prejudice all claims against them. Both of the motions to dismiss are fully briefed and ripe for review. For the following reasons, both motions to dismiss must be granted.

## II.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true.  Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  Id. (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments."  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  Id.  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a

statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S.Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## III. Discussion

### A. Mr. Davis, Mr. Wood, and Hancock County's Motion to Dismiss

This motion to dismiss first argues that the plaintiff has failed to plead any cognizable claim against Hancock County, and that the claims against Hancock County should be dismissed as a matter of law because the plaintiff has not satisfied the federal pleading standard. Next, the motion argues that all claims against Mr. Davis and Mr. Wood, who are and were county prosecutors at all relevant times, must be dismissed due to absolute prosecutorial immunity. The motion then contends that the defendants are also entitled to qualified immunity as to all claims. Lastly, the

motion asserts that monetary damages are not available in regard to the West Virginia state constitutional claims, and that those claims are thus moot.

The plaintiff filed a response in opposition to the motion to dismiss. As a preliminary matter, the plaintiff withdraws his Sixth and Eighth Amendment claims against the prosecutor defendants. The plaintiff then argues that his Facebook posts were protected speech because the posts were nearly a year old, made in the context of political speech, and do not satisfy the test for incitement to imminent lawless action under Brandenburg v. Ohio, 395 U.S. 444 (1969), or any criminal statute. The plaintiff contends that, despite clearly established law protecting the plaintiff's speech, the prosecutors conspired to cause him to be kept in custody with no charges pending and advised Trooper White of the additional protected speech in other Facebook posts.

Specifically, the plaintiff contends that the motion to dismiss should be denied because (1) the complaint establishes the required elements of a § 1983 claim for retaliation in violation of the First Amendment; (2) the complaint states § 1983 claims for false arrest and malicious prosecution in violation of the Fourth Amendment because neither Facebook post constitutes probable cause for the commission of a crime; (3) the prosecutors are not entitled to prosecutorial immunity because of well-established law that prosecutors are not entitled to absolute immunity for

investigations and other non-prosecutorial functions; (4) the prosecutors are not entitled to qualified immunity because there was no evidence that the Facebook posts met the requirements of any criminal statute, the plaintiff's First Amendment rights are clearly established, and the magistrate's issuance of a warrant did not insulate them; (5) Hancock County is a proper defendant in this action because the prosecutors' action were taken in accordance with the practices, policies, and procedures of Hancock County; (6) the complaint states a claim that Hancock County violated the plaintiff's Sixth Amendment rights by attempting to interfere with his right to the counsel of his choice; (7) the complaint states a claim that Hancock County violated his Eighth Amendment rights by setting his bail at an unconstitutionally high amount as part of a pattern, practice, or custom of Hancock County; (8) the complaint adequately states a claim for injunctive relief against Hancock County; and (9) the complaint adequately alleges violations of the West Virginia Constitution.

The defendants filed a reply to the plaintiff's response in opposition. In reply, the defendants argue that (1) the plaintiff's First Amendment claims must be dismissed because the defendants are immune from any claim based upon "giving legal advice" or their alleged involvement in any investigation, and they cannot be held liable in connection with allegations that the plaintiff was inappropriately held in jail; (2) the plaintiff's

Sixth Amendment claim against Hancock County must be dismissed because the plaintiff had no constitutional right to be represented by his nephew, the plaintiff did not sufficiently plead a Sixth Amendment claim against Hancock County, and the plaintiff's Sixth Amendment claim is not viable simply based upon the alleged facts; (3) the plaintiff's Eighth Amendment claim against Hancock County must be dismissed because the plaintiff does not allege any such wrongdoing on the part of Hancock County; (4) any claim for injunctive relief is moot and cannot proceed in this case because the alleged damages do not amount to "irreparable harm" and it is unclear how any form of injunctive relief could provide a remedy in connection with the alleged damages; and (5) monetary damages are not available in connection with the West Virginia constitutional claims.

     1.   <u>Hancock County</u>

     This Court finds that Hancock County is not a proper defendant in this action because the plaintiff does not allege that the prosecutors' actions were taken in accordance with any specific practice, policy, or procedure of Hancock County. Under <u>Monell v. Department of Social Services of City of New York</u>, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978).

The United States Court of Appeals for the Fourth Circuit has set forth the following pleading standard for a Monell claim:

> To prevail on a Monell claim, [the plaintiff] "must point to a persistent and widespread practice[] of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference."

Holloman v. Markowski, 661 F. App'x 797, 799 (4th Cir. 2016) (quoting Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014)).

Here, the plaintiff does not allege any persistent or widespread practice on the part of Hancock County in connection to his Sixth Amendment, Eighth Amendment, or any other claim. The plaintiff also does not allege that Hancock County policymakers had any actual or constructive knowledge of unconstitutional conduct, or that the policy makers were deliberately indifferent to any unconstitutional conduct. Thus, Hancock County cannot be sued under § 1983, and the plaintiff's claims against Hancock County fail under Twombly.

   2. Mr. Davis and Mr. Wood

      a. First and Fourth Amendment Claims

         i. Prosecutorial Immunity

This Court finds that Mr. Davis and Mr. Wood are entitled to prosecutorial immunity as to the First and Fourth Amendment claims

against them. "In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976). The United States Court of Appeals for the Fourth Circuit has recently described prosecutorial immunity as follows:

> Absolute immunity protects "the vigorous and fearless performance of the prosecutor's duty" that is so essential to a fair, impartial criminal justice system. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427-28, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). As representatives of the people, prosecutors have a responsibility to enforce the laws evenhandedly and to exercise independent judgment in seeking justice. <u>See id.</u> at 423-24, 96 S.Ct. 984. "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." <u>Id.</u> at 424-25, 96 S.Ct. 984. No matter how conscientious a prosecutor may be, "a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." <u>Id.</u> at 425, 96 S.Ct. 984. Without immunity from suit, this threat of retaliatory litigation would predispose prosecutors to bring charges based not on merit but on the social or political capital of prospective defendants. <u>See id.</u> at 438, 96 S.Ct. 984 (White, J., concurring) ("[T]he fear of being harassed by a vexatious suit, for acting according to their consciences would always be greater where powerful men are involved." (internal quotation marks omitted)).
>
> The protection that absolute immunity affords "is not grounded in any special 'esteem for those who perform [prosecutorial] functions, and certainly not from a desire to shield abuses of office.'" <u>Kalina v. Fletcher</u>, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Rather, it stems from courts' recognition that "any lesser degree of immunity could impair the judicial process itself." <u>Id.</u> (quoting <u>Malley</u>, 475 U.S. at 342, 106 S.Ct. 1092).

> Because absolute immunity safeguards the process, not the
> person, it extends only to actions "intimately associated
> with the judicial phase of the criminal process."
> <u>Imbler</u>, 424 U.S. at 430-31, 96 S.Ct. 984. All other
> actions are entitled only to qualified immunity. <u>Buckley
> v. Fitzsimmons</u>, 509 U.S. 259, 273, 113 S.Ct. 2606, 125
> L.Ed.2d 209 (1993). To determine whether a particular
> act is "intimately associated with the judicial phase,"
> <u>Imbler</u>, 424 U.S. at 430, 96 S.Ct. 984, we employ a
> functional approach. We look to "the nature of the
> function performed," without regard to "the identity of
> the actor who performed it," "the harm that the conduct
> may have caused," or even "the question whether it was
> lawful." <u>Buckley</u>, 509 U.S. at 269, 271, 113 S.Ct. 2606
> (internal quotation marks and citation omitted). The
> official claiming absolute immunity "bears the burden of
> showing that such immunity is justified for [each]
> function in question." <u>Burns v. Reed</u>, 500 U.S. 478, 486,
> 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

<u>Nero v. Mosby</u>, No. 17-1166, 2018 WL 2090902, at *4-5 (4th Cir. May

7, 2018).

Here, the plaintiff's allegations are based on Mr. Davis and

Mr. Wood's actions as prosecutors and, thus, "fall squarely under

the umbrella of absolute immunity." <u>Id.</u> at *5. Thus, Mr. Davis

and Mr. Wood would be absolutely immune from this civil action even

if they acted maliciously or improperly in prosecuting the

plaintiff. Accordingly, this Court finds that the plaintiff's

claims against Mr. Davis and Mr. Wood cannot proceed.

This Court notes that the plaintiff has raised several

arguments for the first time in his response. First, the plaintiff

argues in his response that his First Amendment claims against the

prosecutors should not be dismissed because the prosecutors

provided legal advice to the State Police defendants. However, the

plaintiff did not allege in his complaint that the prosecutors provided legal advice, and, thus, this Court cannot consider the argument in ruling on the motion to dismiss. Second, the plaintiff argues in his response that his claims are based upon the prosecutors' involvement in the investigation of his charges. The plaintiff also did not allege in his complaint that the prosecutors were involved in the investigation. Thus, that argument also fails.

Additionally, the plaintiff argues in his response that his claims should not be dismissed because they are based on the prosecutors holding him in jail for "hours" while new complaints against him were being prepared. This Court finds that this claim must be dismissed because it was not unconstitutional to hold the plaintiff in jail for several hours while the complaint was being prepared. See Cty. of Riverside v. McLaughlin, 500 U.S. 44, 53-54 (1991) ("[T]he Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest."); Lund v. Hennepin Cty., 427 F.3d 1123, 1127 (8th Cir. 2005) (finding no due process violation where "the County's outprocessing procedures delayed [the plaintiff's] release for twelve hours with the knowledge of the County and its officials").

ii.  <u>Qualified Immunity</u>

Even if Mr. Davis and Mr. Wood were not entitled to
prosecutorial immunity, they would still be entitled to qualified
immunity.  "Government officials performing discretionary functions
are entitled to qualified immunity from liability for civil damages
to the extent that 'their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  <u>Winfield v. Bass</u>, 106 F.3d
525, 530 (4th Cir. 1997) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S.
800, 818 (1982)).  In reviewing a qualified immunity defense, this
Court must identify the specific right that the plaintiff asserts
was infringed by the challenged conduct, recognizing that the right
must be defined at the appropriate level of particularity.  <u>Taylor
v. Waters</u>, 81 F.3d 429, 433 (4th Cir. 1996).  This Court must then
consider "whether, at the time of the claimed violation, this right
was clearly established and 'whether a reasonable person in the
official's position would have known that his conduct would violate
that right.'"   <u>Winfield</u>, 106 F.3d at 530 (internal quotations
omitted).

Here, the plaintiff has not alleged that Mr. Davis and Mr.
Wood clearly violated the law when they prosecuted the plaintiff
for violations of West Virginia Code § 61-5-27(c)(1).  Section
61-5-27(c)(1) provides that it is illegal for individuals to cause
or threaten to cause harm to public officials in retaliation for

the public official's performance or nonperformance of an official duty. This Court finds that the plaintiff's Facebook posts establish probable cause that the plaintiff violated § 61-5-27(c)(1).

The July 7, 2014 Facebook post includes a link to an article about Judge Martin J. Gaughan's work with teenage drug addicts. Above the link, the plaintiff writes in the post that "Hancock County Judge Martin J. Gaughan feels sympathetic to heroin users" and urges "heroin users" to go to Judge Gaughan's home, "take what you want, trash the place and terrorize HIS family." That post also urges the "heroin users" to not "forget the nasty New Cumberland mayor on Ridge Ave who hides behind her home security system." ECF No. 1-5. The August 24, 2014 Facebook post provides a link to an article about Representative Randy Swartzmiller's involvement with the State Dangerous Wild Animals Board. Along with the link to the article, the plaintiff includes in the post Representative Swartzmiller's home address and instructions to "criminals and crackheads" to go to the home and "do everything you have done to terrorize other citizens of Hancock County. Help yourself to his stuff . . . . Camp out in woods and stay as long as you like." ECF No. 1-7.

After reviewing both of these posts, this Court finds that the plaintiff did, in violation of the West Virginia statute, express dissatisfaction with public officials and then threaten to harm

those public officials.  Thus, the defendant prosecutors properly prosecuted the plaintiff for violating the statute.  The plaintiff does not allege any facts that might show that Mr. Davis and Mr. Wood violated clearly established statutory or constitutional rights in prosecuting the plaintiff under the statute.  Instead, the facts show that Mr. Davis and Mr. Wood had probable cause to believe that the plaintiff violated the statute.  Accordingly, Mr. Davis and Mr. Wood are entitled to qualified immunity.

### c.  Inflammatory Statements

The plaintiff has alleged that Mr. Davis and Mr. Wood made inflammatory statements to the press.  Specifically, the plaintiff alleges prosecutors made inflammatory statements in a certain newspaper article in which the prosecutors were asked to comment on the charges filed against the plaintiff.  The article in question states:

> Neither Wood nor Hancock County Prosecutor Jim Davis would elaborate on why the terrorist threat charges were dropped.
>
> "It's just that the ones we're pursuing are much more specific and are very appropriate," Davis said.  "It's just a better way to go."
>
> Davis said the case is not so much about free speech than about the proper use of free speech.
>
> "People have free speech, but you can't yell 'fire' in a crowded theater . . .  You have to be responsible about it," he said.

ECF No. 1-11.  This Court finds that none of the prosecutors' statements in the article can be characterized as inflammatory.

15

The statements are simply a generic report to the press about the nature of the charges filed against the plaintiff. Thus, the plaintiff's inflammatory statements claim fails under <u>Twombly</u> and must be dismissed.

        d.   <u>Sixth Amendment Claim</u>

The plaintiff has withdrawn his Sixth Amendment claim as to Mr. Wood and Mr. Davis, but maintains it as to Hancock County. For the reasons discussed previously, Hancock County is not a proper defendant in this case and all claims against it must be dismissed, including the Sixth Amendment claim. Even if Hancock County were not dismissed from the case and the plaintiff had not withdrawn the claim against Mr. Davis and Mr. Wood, the claim would still fail as to all three defendants on the merits.

In his Sixth Amendment claim, the plaintiff alleges that the defendants violated his constitutional right to counsel by subpoenaing his nephew, Jerry Krzys, who is an attorney. Jerry Krzys had visited the plaintiff in jail while he was being held on the two felony counts of retaliation under West Virginia Code § 61-5-27. However, at the time the subpoena was issued, attorney Philip Sbrolla, not Jerry Krzys, was the plaintiff's attorney of record. Furthermore, Jerry Krzys was not licensed to practice law in the state of West Virginia at the time the subpoena was issued. Thus, any conversation that Jerry Krzys had with the plaintiff at the jail was not protected by attorney-client privilege, and the

plaintiff's Sixth Amendment right to counsel was not violated by the subpoena.

e. Eighth Amendment Claim

In his Eighth Amendment claim, the plaintiff alleges that the defendants conspired to set his bail at an unconstitutionally high amount in violation of the Eighth Amendment. However, Mr. Wood and Mr. Davis are prosecutors and, thus, do not set bail. Rather, the presiding judge set the plaintiff's bail. See W. Va. Code § 62-1C-3 ("The amount of bail shall be fixed by the court or justice with consideration given to the seriousness of the offense charged, the previous criminal record of the defendant, his financial ability, and the probability of his appearance."). Accordingly, this Eighth Amendment conspiracy claim against the prosecutor defendants fails under Twombly.

f. Monetary Damages

The plaintiff has requested monetary damages in connection with his West Virginia state constitutional claims. However, the West Virginia Constitution does not contain any provision allowing for monetary damages as a result of alleged state constitutional violations. See Smoot v. Green, No. 2:13-10148, 2013 WL 5918753, at *4 (S.D. W. Va. Nov. 1, 2013) ("[The defendants] assert that Article III of the West Virginia Constitution does not give ruse to claims for money damages against them. They are correct."). Thus,

the plaintiff's claim for monetary damages in connection with the alleged state constitutional violations fails under <u>Twombly</u>.

    g.   <u>Injunctive Relief</u>

The plaintiff has also requested an order enjoining the defendants from "subjecting [the plaintiff] to the conditions set forth in the Complaint." ECF No. 1 at 15. This Court first notes that

> [t]he United States Supreme Court has ruled that "[n]either a state nor its officials acting in their official capacities are persons under Section 1983." <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Litigants are not provided a forum by Section 1983 when they seek a remedy against a state for alleged deprivation of civil liberties.

<u>Orum v. Haines</u>, 68 F. Supp. 2d 726, 730 (N.D. W. Va. 1999). "[C]laims for back pay, monetary damages, and retrospective declaratory relief are barred by the Eleventh Amendment . . . . However . . . the Eleventh Amendment does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law." <u>Meiners v. Univ. of Kansas</u>, 359 F.3d 1222, 1232 (10th Cir. 2004) (citing <u>Ex parte Young</u>, 209 U.S. 123, 159–60 (1908)).

As to the claim against the prosecutor defendants for prospective injunctive relief, the Fourth Circuit has stated:

> Where a § 1983 plaintiff also seeks injunctive relief, it will not be granted absent the plaintiff's showing that there is a "real or immediate threat that [he] will be wronged again . . . in a similar way." <u>Simmons [v. Poe]</u>, 47 F.3d [1370,] 1382 [4th Cir. 1995] (quoting <u>City of Los</u>

> Angeles v. Lyons, 461 U.S. 95, 111 . . . (1983)). Even
> assuming [the plaintiff] could make out a violation of
> his constitutional rights, "past wrongs do not in
> themselves amount to that real and immediate threat of
> injury." Simmons, 47 F.3d at 1382 (quoting Lyons, 461
> U.S. at 103 . . .).

Raub v. Campbell, 785 F.3d 876, 885–86 (4th Cir. 2015).

Here, this Court finds that the plaintiff has not shown any real or immediate threat that he will be wronged again in a similar way absent injunctive relief. Even assuming the prosecutor defendants had violated the plaintiff's constitutional rights, the past violation would not amount to a real and immediate threat of further constitutional violations. Thus, the plaintiff's allegation that he will be similarly injured in the immediate future is merely speculative and does not entitle him to injunctive relief.

B.  State Police Defendants' Motion to Dismiss

In their motion to dismiss, the State Police defendants argue that the plaintiff pleads no facts that show that he has a plausible claim to relief against them under the Sixth and Eighth Amendments. Additionally, the State Police defendants argue that Trooper White is entitled to qualified immunity from the plaintiff's claims against him under the First and Fourth Amendments because he had at least arguable probable cause to arrest the plaintiff. Lastly, the State Police defendants contend that the official capacity claims against them fail as a matter of law because the plaintiff cannot seek monetary damages or

retrospective declaratory relief against government officials sued in their official capacities, and he has pled no facts to show that there is an imminent threat of future harm to him that would warrant prospective injunctive relief.

The plaintiff filed a response in opposition to the motion to dismiss. As a preliminary matter, the plaintiff withdraws his Sixth and Eighth Amendment claims, but not his West Virginia constitutional claims, against Trooper White in his individual capacity. The plaintiff states that, with respect to those claims, he seeks only injunctive relief against the State Police defendants in their official capacities for their federal constitutional violations. The plaintiff then argues that Trooper White ignored fundamental First Amendment principles by arresting the plaintiff without a warrant for allegedly making a conditional threat in a political Facebook post. Next, the plaintiff argues that, after it was determined that the complaint would be dismissed, Trooper White looked for additional protected speech to retaliate against the plaintiff and conspired to keep the plaintiff in custody when no charges were pending. The plaintiff further contends that the State Police defendants fail to offer a single case supporting the conclusion that any of the speech at issue is unprotected or that the plaintiff could be twice arrested and incarcerated for engaging in protected speech.

Specifically, the plaintiff contends that the motion to dismiss should be denied because (1) the complaint establishes the required elements of a § 1983 claim for retaliation in violation of the First Amendment; (2) the complaint states § 1983 claims for false arrest and malicious prosecution in violation of the Fourth Amendment because neither Facebook post constitutes probable cause for the commission of a crime; (3) Trooper White is not entitled to qualified immunity because there was no evidence that the Facebook posts met the requirements of any criminal statute, the plaintiff's First Amendment rights are clearly established, and the magistrate's issuance of a warrant did not insulate him; (4) the complaint states a claim that the State Police defendants violated the plaintiff's Sixth Amendment rights by attempting to interfere with his right to the counsel of his choice; (5) the complaint states a claim that the plaintiff's Eighth Amendment rights were violated because his bail was set at an unconstitutionally high amount as part of a pattern, practice, or custom of the State Police; (6) the complaint adequately states a claim for injunctive relief against the State Police defendants; and (7) the West Virginia Constitution allows for monetary damages.

The State Police defendants filed a reply to the plaintiff's response in opposition. In reply, the State Police defendants argue that (1) the plaintiff does not allege any facts to overcome Trooper White's qualified immunity from his claims under the First

21

and Fourth Amendments; (2) the plaintiff does not allege any facts
to state a claim under the Sixth or Eighth Amendments against them;
(3) the plaintiff does not allege any facts that would entitle him
to injunctive relief; and (4) the plaintiff does not allege any
claims under the West Virginia Constitution.

    1.  <u>First and Fourth Amendment Claims</u>

       a.  <u>Qualified Immunity</u>

Like the prosecutor defendants, the State Police defendants
are entitled to qualified immunity from the plaintiff's First and
Fourth Amendment claims against them. The plaintiff alleges that
the State Police defendants violated his First Amendment rights by
arresting him in retaliation for engaging in constitutionally-
protected speech. The plaintiff alleges that the State Police
defendants violated his Fourth Amendment rights because he was
arrested without a warrant or exigent circumstances.

The Fourth Circuit has stated:

> Qualified immunity protects [police] officers who commit
> constitutional violations but who, in light of clearly
> established law, could reasonably believe that their
> actions were lawful. <u>Henry v. Purnell</u>, 652 F.3d 524, 531
> (4th Cir. 2011) (<u>en banc</u>). When evaluating whether a
> right was clearly established at the time of a violation,
> courts do not ask whether the right allegedly violated
> was established "as a broad general proposition" but
> whether "it would be clear to a reasonable official that
> his conduct was unlawful in the situation he confronted."
> <u>Raub v. Campbell</u>, 785 F.3d 876, 882 (4th Cir. 2015)
> (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201–202, 121
> S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Pegg v. Herrnberger, 845 F.3d 112, 117 (4th Cir. 2017). "[Q]ualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

Here, the State Police defendants are entitled to qualified immunity because they had probable cause to support the arrest of the plaintiff and, thus, reasonably believed that their actions were lawful. See Pegg, 845 F.3d at 119 (finding that the police officers were entitled to qualified immunity where probable cause existed for the arrest). West Virginia's terroristic threat statute makes it a felony to "knowingly and willfully threaten[] to commit a terrorist act, with or without the intent to commit the act." W. Va. Code § 61-6-24(b). The plaintiff admitted to Trooper White that he made a Facebook post threatening to "hunt [four police officers] down and put a bullet in their head" because he was "sick of the corruption." ECF No. 1-1, 1-2. Under the West Virginia statute, a terroristic act includes an act "[l]ikely to result in serious bodily injury or damage to property or the environment" and intended to "[r]etaliate against a branch or level of government for a policy or conduct of the government." § 61-6-24(a)(3)(B)(iv).

Furthermore, the First Amendment does not protect true threats, even if the threat is conditional in nature. See United States v. Armel, 585 F.3d 182, 185 (4th Cir. 2009) ("Statements constitute a 'true threat' if 'an ordinary reasonable recipient who is familiar with the[ir] context . . . would interpret [those statements] as a threat of injury.'" (quoting United States v. Roberts, 915 F.2d 889, 891 (4th Cir. 1990))); Virginia v. Black, 538 U.S. 343, 359 (2003) ("[T]he First Amendment also permits a State to ban a 'true threat.'" (citing Watts v. United States, 394 U.S. 705, 708 (1969))).

Based on the plaintiff's admission regarding the Facebook post, this Court finds that the State Police defendants had probable cause to believe the plaintiff had violated the West Virginia terroristic threat statute. Because the State Police defendants had probable cause for the arrest, they are entitled to qualified immunity from the plaintiff's First and Fourth Amendment claims against them.

2. Sixth and Eighth Amendment Claims

Also like with the prosecutor defendants, this Court finds that the plaintiffs' Sixth and Eighth Amendment claims against the State Police defendants fail under Twombly. In his Sixth Amendment claim, the plaintiff alleges that the prosecutor defendants issued the subpoena to Jerry Krzys, his nephew who visited him in jail. The plaintiff does not mention in his complaint how the State

24

Police defendants are involved in the alleged Sixth Amendment violation. Even so, Jerry Krzys was not licensed to practice law in the state of West Virginia at the time the subpoena was issued, and, thus, the plaintiff's Sixth Amendment right to counsel was not violated by the subpoena.

In his Eighth Amendment claim, the plaintiff alleges that his bail was set at an unreasonably high amount. However, the plaintiff also does not allege any facts to how the State Police defendants are were involved in setting the plaintiff's bail. Even if the plaintiff had alleged that the State Police defendants were involved, police officers do not have the authority to set bail. Rather, judges set bail. W. Va. Code § 62-1C-3. Thus, the plaintiff's Eighth Amendment claim against the State Police defendants also fails.

3. <u>Monetary Damages</u>

As is discussed above regarding the prosecutor defendants' motion to dismiss, the West Virginia Constitution does not contain any provision allowing for monetary damages as a result of alleged state constitutional violations. Thus, the plaintiff's claim for monetary damages in connection with the alleged state constitutional violations also fails under <u>Twombly</u> as to the State Police defendants.

### 4. Injunctive Relief

The plaintiff's claim for prospective injunctive relief also fails against the State Police defendants for the same reasons it failed against the prosecutor defendants. Under Raub, a claim in a § 1983 action for injunctive relief "will not be granted absent the plaintiff's showing that there is a 'real or immediate threat that [he] will be wronged again . . . in a similar way.'" Raub, 785 F.3d at 885 (quoting Simmons, 47 F.3d at 1382). Here, this Court finds that the plaintiff has not shown any real or immediate threat that he will be wronged again in a similar way absent injunctive relief. The plaintiff has not pled any facts suggesting that he will be subjected to future arrests and criminal prosecutions based on his Facebook posts. Thus, the plaintiff's allegation that he will be similarly injured in the immediate future is merely speculative and does not entitle him to injunctive relief.

## IV. Conclusion

For the reasons set forth above, J.L. Cahill and Michael S. White, II's motion to dismiss (ECF No. 9) and James W. Davis, Jr., Esq., Jack Wood, Esq. and Hancock County, West Virginia's motion to dismiss (ECF No. 12) are GRANTED. Additionally, Hancock County, West Virginia, James W. Davis, Jr., Esq., and Jack Wood, Esq.'s motion for a protective order (ECF No. 28) is DENIED AS MOOT. It

is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    June 5, 2018

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE